OPINION OF THE COURT
Ann E. Pfeiffer, J.
In the early morning hours of October 8, 1987, Rochester Police Department officers contacted this Judge for an arrest warrant of Maxie Shipp. The application was denied. Because of the issues raised and the possibility of such an incident recurring, this memorandum decision was thought to be appropriate.
FACTS
Maxie Shipp is a suspect on assault, second degree, and criminal possession of a weapon, second degree, charges. On *496 September 10, 1987, it is alleged, the defendant shot a man in the shoulder. The alleged victim signed an affidavit the same date, September 10, 1987. However, no complaint was filed in Rochester City Court. The defendant was not apprehended at that time.
Four weeks afterwards, Rochester Police Department officers located the defendant at a residence within the city. The police thereupon staked out the apartment and sought an arrest warrant. As Part I Judge, I was contacted by the police to sign the warrant at my residence in the early morning hours. Based on the information supplied to me over the phone by the police, I declined to sign the warrant, and requested that the "on call” Assistant District Attorney contact me.
In telephone conversations with the Assistant District Attorney, several issues arose. Before an arrest warrant is signed, must an accusatory instrument be filed? If so, what constitutes "filing”? Lastly, when is it appropriate for a Judge to decline to sign a warrant?
LAW
It was asserted by the Assistant District Attorney that an accusatory instrument need not be filed in court before an arrest warrant is issued. This position overlooks the importance of the act of filing.
The Statute of Limitations as well as a defendant’s statutory speedy trial right are triggered by filing. (CPL 1.20 [17] [" 'Commencement of criminal action’ ” defined]; 30.10 [2]; 30.30 [1].) So, too, a defendant’s right to counsel attaches at the time of commencement, i.e., with filing. (People v Samuels, 49 NY2d 218 [1980].)
CPL 120.20 (1) states: "When a criminal action has been commenced in a local criminal court by the filing therewith of an accusatory instrument * * * against a defendant who has not been arraigned upon such accusatory instrument * * * such court may, if such accusatory instrument is sufficient on its face, issue a warrant for such defendant’s arrest.”
According to Bellacosa, Practice Commentaries (McKinney’s Cons Laws of NY, Book 11A, CPL 120.10, at 111), "Conspicuously absent from this section is any authority to issue an arrest warrant prior to the filing of an accusatory instrument.” In discussing CPL 120.20 (1), Judge Bellacosa notes that "subdivision one provides that authority to issue an *497 arrest warrant is dependent upon the existence of a filed accusatory instrument”. (Bellacosa, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 120.20, at 117.)
Thus, the filing of an accusatory instrument is a precondition to issuing an arrest warrant.
The government asserts, however, that even if filing is necessary, leaving a copy of the instrument at a Judge’s residence constitutes "filing”. Again, this court disagrees.
No cases are directly on point construing the filing requirement of CPL article 120. Analogous situations must therefore be sought.
In Shields v Benderson Dev. Co. (76 Misc 2d 322 [1973]) the delivery of papers in a summary proceeding to a Judge in his court chambers was held to not constitute a "filing” with the court or clerk for purposes of RPAPL 735 (2). "The object of filing is to deposit the document in a public place so that it may be seen and examined by any person interested, and there can be no filing of a paper in a legal sense except by its delivery to an official whose duty is to file papers and who is required to keep and maintain an office or other public place for their deposit.” (Matter of Stanley v Board of Appeals, 168 Misc 797 [1938].) If leaving papers in chambers does not constitute "filing”, then a fortiori leaving an accusatory instrument with a Judge at her home is insufficient.
This case also brings up the issue of when it is appropriate for a Judge to decline to sign an arrest warrant. LaFave notes, "Empirical studies have shown that there is reason to question the oft-stated assumption that before-the-fact judicial authorization necessarily affords greater protection of Fourth Amendment rights. Arrest warrants, in particular, are often issued without any meaningful participation by the judicial officer; the judge is likely to sign the warrant without a careful reading of the complaint or any direct examination of the complainant.” (2 LaFave, Search and Seizure, § 5.1 [b], at 230-231 [2d ed].)
The approach of signing warrants without review so that a later Judge, in a suppression hearing, may determine the warrant’s propriety, is a more wasteful alternative, and ultimately more harmful; an otherwise valid conviction may not result, due to incorrect preparation of the papers. "What is clear * * * is that the practice has a most undesirable effect upon the operation of the criminal justice system generally * * * [T]he inconsistency between the standards applied when *498 a warrant is requested and when it is subsequently challenged further compounds the uncertainty in the minds of the police as to what the legal norms governing their conduct actually are. Somehow the requirements for a valid arrest warrant or search warrant come out differently by the mere passage of a day or two.” (LaFave, Improving Police Performance Through the Exclusionary Rule — Part I: Current Police and Local Practices, 30 Mo L Rev 391, 414 [1965].)
The Judge’s function is to ensure that the preconditions to issuing a warrant do in fact exist. The requirement of a warrant is constitutionally based: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated” (US Const 4th Amend). An arrest is a significant invasion of personal liberty: there is the indignity of arrest, the process of fingerprinting, photographing, the acquiring of an arrest record; and detention until release upon bail. "[I]t is the responsibility of the neutral court, and not the police, to determine whether there are sufficient grounds to issue a warrant and permit 'the serious intrusion that the deprivation of another’s liberty constitutes’ ”. (Bellacosa, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 120.20, at 117.)
Every warrant, search or arrest, is reviewed by this Judge to determine whether it meets statutory and constitutional requirements. This approach does not eliminate the later review by the Judge at a suppression hearing, but it may reduce the number of illegal warrants and unjustified arrests.